**UNITED STATES DISTRICT COURT**

**DISTRICT OF OREGON**

**PORTLAND DIVISION**

| | |
|---|---|
| KEVIN WALCH, | ) |
| | ) |
| Plaintiff, | ) **No. 03:12-cv-00345-HU** |
| | ) |
| vs. | ) |
| | ) |
| COLUMBIA COLLECTION SERVICE, INC., | ) **FINDINGS & RECOMMENDATION** |
| | ) **ON MOTION TO DISMISS** |
| | ) |
| Defendant. | ) |

Michael Fuller
OlsenDaines, PC
9415 SE Stark Street, Suite 207
Portland, OR 97216

    Attorney for Plaintiff


Jeffrey I. Hasson
Davenport & Hasson, LLP
12707 NE Halsey Street
Portland, OR 97230

    Attorney for Defendant

1 - FINDINGS & RECOMMENDATION

HUBEL, Magistrate Judge:

In this case, the plaintiff Kevin Walch seeks to recover from the defendant Columbia Collection Service, Inc. ("Columbia") for allegedly malicious and unlawful debt collection practices. *See* Dkt. #1-1, pp. 2-12. The case is before the court on Columbia's motion to dismiss, Dkt. #8. The motion is fully briefed, and I submit the following Findings and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

## ***I.   PROCEDURAL HISTORY***

Walch owed a debt to Silverton Hospital, which he alleges Columbia was attempting to collect. *Id.* ¶ 4. On July 21, 2010, Walch filed a voluntary bankruptcy petition under Chapter 7 of the Bankruptcy Code, 11 U.S.C. § 701 *et seq.* *Id.* ¶ 5; Dkt. #7, p. 5. In his bankruptcy schedules, he included Silverton Hospital and "Columbia Collections, Inc." as unsecured creditors. *Id*. Walch received a discharge in his bankruptcy case on October 25, 2010. Dkt. #1-1 ¶ 7; Dkt. #7, p. 5. According to Walch, Columbia was notified of his bankruptcy discharge by the Bankruptcy Court at Columbia's "registered business address"; i.e., "Columbia Collections, PO Box 22779 Portland, OR 97269."[1] Dkt. #1-1 ¶ 8; Dkt. #7, p. 5. Walch claims that nevertheless, Columbia continued

---

[1] Records of the Oregon Secretary of State indicate "Columbia Collections" is an assumed business name of "Columbia Collection Service, Inc." The correct mailing address of the registered agent for "Columbia Collections" is P.O. Box 22709 (not 22779), Milwaukee, OR 97269. Columbia Collection Service, Inc. has a different registered agent and principal place of business from "Columbia Collections." *Compare* http://filinginoregon.com/pages/business_registry/research/index.html, Registry No. 125250-93 *with* Registry No. 212373-18 (visited 04/30/12).

2 - FINDINGS & RECOMMENDATION

to engage in actions to collect the discharged debt.  Dkt. #1-1, *passim*.

On January 23, 2012, Walch filed suit against Columbia in Clackamas County, alleging that despite having been notified of discharge of the Silverton Hospital debt, Columbia continued its collection efforts, including obtaining a default judgment against him for the amount of the debt plus attorney's fees and costs, and even garnishing his wages.  He also alleges Columbia unlawfully contacted his employer in an attempt to collect the discharged debt; threatened and harassed him, caused him to suffer emotional distress, and damaged his reputation.  Dkt. #1-1.  Walch asserts the following claims for relief in his Complaint:

1.  First Claim for Relief - he alleges Columbia "willfully disobeyed the Bankruptcy Court Discharge Order," entitling Walch to recover his attorney's fees and costs under ORS § 20.105.  Dkt. #1-1, ¶¶ 20 & 21.

2.  Second Claim for Relief - he claims Columbia's debt collection practices were unlawful, in violation of ORS § 646.639, entitling him to recover "actual damages or $200, punitive damages, reasonable attorneys[']s fees and costs pursuant to ORS 646.641."  *Id.* ¶¶ 22-24.

3.  Third Claim for Relief - he alleges Columbia's actions violated the federal Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, in several respects, entitling him to recovery statutory damages, attorney's fees, and costs.  *Id.* ¶¶ 25-32.

4.  Fourth Claim for Relief - he claims Columbia converted $289.70 of his wages by way of unlawful garnishment, entitling him

3 - FINDINGS & RECOMMENDATION

to recover the withheld wages, as well as damages for the loss of use of the money. *Id.*, ¶¶ 33-44.

On February 27, 2012, Columbia removed the case to this court based on federal question jurisdiction by virtue of Walch's claims under the FDCPA. Dkt. #1.

Columbia moves to dismiss this action on two grounds; i.e., lack of subject-matter jurisdiction over claims involving Walch's bankruptcy, pursuant to Federal Rule of Civil Procedure 12(b)(1) and *Walls v. Wells Fargo Bank, N.A.*, 276 F.3d 502 (9th Cir. 2002); and failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6). Dkt. ##4, 5, & 8.

### *II.  STANDARDS*

"[A] party who seeks to invoke the jurisdiction of the federal courts has the burden of satisfying the jurisdictional require-ments." *Medici v. JPMorgan Chase Bank, N.A.*, slip op., 2012 WL 929785, at *1 (D. Or. Mar. 16, 2012) (Haggerty, J.) (citing *Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011)). In considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1), the court "generally accepts as true the allegations in the complaint." *Black v. United States*, slip op., 2012 WL 892243, at *1 (D. Or. Mar. 13, 2012) (Mosman, J.) (citing *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004)). Where appropriate, "the court may consider affidavits and other evidence supporting or attacking the complaint's jurisdictional allegations[,] . . . [but] [w]hen the court receives only written submissions, 'the plaintiff need only make a *prima facie* showing of jurisdiction.'" *Turner v.*

4 - FINDINGS & RECOMMENDATION

*Advantage N.W. Credit Union*, slip op., 2012 WL 529974, at *2 (D. Or. Feb. 17, 2012) (Brown, J.) (citations omitted).

With regard to the standards governing motions to dismiss under Rule 12(b)(6), Chief Judge Aiken has explained:

> Under Fed. R. Civ. P. 12(b)(6), a complaint is construed in favor of the plaintiff, and its factual allegations are taken as true. *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010). "[F]or a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. United States Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 563[, 127 S. Ct. 1955, 1969, 167 L. Ed. 2d 929] (2007). "[G]enerally the scope of review on a motion to dismiss for failure to state a claim is limited to the Complaint." *Daniels-Hall*, 629 F.3d at 998.

*Gambee v. Cornelius*, slip op., 2011 WL 1311782, at *2 (D. Or. Apr. 1, 2011) (Aiken, C.J.).

### III.   DISCUSSION

Columbia argues the court lacks subject matter jurisdiction over Walch's claims pursuant to *Walls*. I examined *Walls* in detail in *Church v. Onewest Bank FSB*, slip op., 2011 WL 2444719 (D. Or. Jan. 18, 2011) (Hubel, M.J.) ("*Church*"), *adopted*, slip op., 2011 WL 2419896 (D. Or. June 15, 2011) (Haggerty, J.). In *Church*, I explained that under *Walls*, to the extent resolution of a party's

5 - FINDINGS & RECOMMENDATION

claims under state or federal consumer protection statutes "requires interpretation of and determination under bankruptcy laws and rules," such claims cannot be maintained in the district court. *Church*, 2011 WL 2444719, at *5. Under *Walls*, Walch's state claims would be preempted and his federal claims would be precluded to the extent they "necessarily entail bankruptcy-laden determinations." As I noted in *Church*, "Under *Walls*, consumer protection claims which 'necessarily entail bankruptcy-laden determinations' are preempted or precluded, even when they are brought in a separate civil action and *even when the bankruptcy is concluded*." *Id.* (emphasis added).

I noted in *Church*, however, that consumer protection claims are properly heard in the district courts when those claims do not directly allege a violation of the bankruptcy discharge order. *Id.* at *6 (citing *Thomas v. U.S. Bank, N.A.*, No. CV-05-1725-MO, 2007 WL 764312, at *9 (D. Or. Mar. 8, 2007) (Mosman, J.)). I therefore will consider each of Walch's claims to determine which of them, if any, may be maintained in this court.

Under *Walls*, and the subsequent line of cases I discussed in *Church*, Walch's First Claim for Relief clearly would be preempted. In that claim, Walch alleges Columbia "willfully disobeyed the Bankruptcy Court Discharge Order[.]" Dkt. #1-1 ¶ 21. For Walch to prevail on this claim, the court would have to find Columbia violated 11 U.S.C. § 524, "which provides that discharge under Title 11 of the Bankruptcy Code operates as an injunction against collecting debt as a personal liability of the debtor." *Walls*, 276 F.3d at 504. The *Walls* court held no private right of action exists for violation of section 524 because the Bankruptcy Code,

6 - FINDINGS & RECOMMENDATION

itself, contains an enforcement mechanism in the form of civil contempt under 11 U.S.C. § 105(a). *Id.*, 276 F.3d at 507-10. Thus, Walch's First Claim for Relief requests precisely the type of determination that *Walls* and its progeny found to be prohibited. *See, e.g.*, *In re Chaussee*, 399 Bankr. 225, 236-37 (9th Cir. BAP 2008) (interpreting *Walls* in concluding that "where the [Bankruptcy] Code and Rules provide a remedy for acts taken in violation of their terms, debtors may not resort to other state and federal remedies to redress their claims lest the congressional scheme behind the bankruptcy laws and their enforcement be frustrated").

In Walch's Second Claim for Relief, he alleges Columbia violated ORS § 646.639, which prohibits unlawful debt collection practices. Walch specifies seven ways in which he claims Columbia violated the statute. In subparagraph 23(a), Walch claims Columbia threatened to and did seize his wages "in violation of ORS 646.639(2)(c)[.]" Dkt. #1-1 ¶ 23(a). Subsection (2)(c) of section 646.639 makes it unlawful for a debt collector to "[t]hreaten the seizure, attachment or sale of a debtor's property when such action can only be taken pursuant to court order without disclosing that prior court proceedings are required." ORS § 646.639(2)(c). In order to prevail on this claim based on the facts alleged by Walch in his Complaint, he would have to prove, first, that the debt had been discharged in bankruptcy. Consequently, this claim would be preempted by *Walls* and its progeny.

In subparagraph 23(b), Walch claims Columbia inconveniently communicated with him in violation or ORS § 646.639(2)(e). Dkt. #1-1 ¶ 23(b). The only factual contention related to this claim is

7 - FINDINGS & RECOMMENDATION

Walch's allegation that Columbia's "attorney directly contacted [him] by mail, demanding [Walch] pay a debt discharged in bankruptcy and threatening to take illegal action against [Walch] if he refused. [Columbia] knew or should have known [Walch] was represented by counsel." Dkt. #1-1, ¶ 9. Contact by Columbia's counsel regarding a discharged debt would implicate the Bankruptcy Code, while contacting him to collect a debt knowing he was represented by counsel would not. This claim would be preempted by *Walls* and its progeny only to the extent it addresses contact regarding a discharged debt.

In subparagraph 23(c), Walch claims Columbia illegally communicated with his employer concerning the debt in violation of ORS § 646.639(2)(f). Dkt. #1-1 ¶ 23(c). Walch's factual allegation relating to this claim asserts that the Writ of Garnishment served on his employer was illegal. To prove this allegation would, in turn, require proof that the debt had been discharged in bankruptcy, again requiring "interpretation of and determination under bankruptcy laws and rules." *Walls* would preclude this claim.

Subparagraphs (d) and (e) of Walch's Second Claim for Relief deal with Columbia's alleged threat or attempt to enforce a right or remedy "with reason to know the right or remedy does not exist, in violation of ORS 646.639(2)(k)." Dkt. #1-1 ¶ 23(d) & (e). At first blush, it would appear each of those allegations would require this court to determine that the debt in question was discharged in bankruptcy. Upon closer examination, however, what actually is required under ORS § 646.639(k) is a determination of what Columbia *knew or had reason to know* at the time it acted as

8 - FINDINGS & RECOMMENDATION

alleged. For purposes of a motion to dismiss, the court finds these allegations state a claim that plausibly suggests Walch's entitlement to relief.

Walch's allegations in subparagraphs 23(f) and 23(g) do not appear to implicate the bankruptcy laws and rules. In 23(f), he claims Columbia represented that the debt could be increased by the addition of attorney fees, "in violation of ORS 646.639(2)(m) and the Oregon Rules of Professional Conduct." Dkt. #1-1 ¶ 23(f). In 23(g), he claims Columbia unlawfully attempted to collect charges and fees in excess of the actual debt, in violation of ORS § 646.639(2)(n).

Thus, in Walch's Second Claim for Relief, his allegations in subparagraph (a), that portion of subparagraph (b) requiring proof that the debt had been discharged, and subparagraph (c) would appear to be preempted by *Walls*. Walch could proceed in this court with that portion of subparagraph (b) relating to contact by Columbia's counsel directly with Walch, knowing he was represented by counsel; and subparagraphs (d) through (g).

In Walch's Third Claim for Relief, he alleges violations of the FDCPA. The claim includes three counts. In Count I, Walch alleges Columbia unlawfully communicated with him despite knowing he was represented by counsel. Dkt. #1-1 ¶ 26. That claim does not implicate the Bankruptcy Code and rules. In Count II, he claims Columbia made false representations, each of which relies on the status of the debt as having been discharged in bankruptcy. *See id.* ¶¶ 28-30. In Count III, Walch claims Columbia unlawfully attempted to collect a debt that had been discharged in bankruptcy. *See id.* ¶ 31. Thus, it appears Counts II and III would be

9 - FINDINGS & RECOMMENDATION

precluded under the *Walls* line of cases, while Count I would survive.

In his Fourth Claim for Relief, Walch alleges Columbia converted his wages in the amount of $289.70. Dkt. #1-1 ¶¶ 34-43. In order for the court to find Walch's wages were seized illegally, the court necessarily would have to find that the debt in question had been discharged in bankruptcy. Therefore, it appears this claim also would be preempted by the Bankruptcy Code under *Walls*.

Walch argues that even his discharge-related claims "do not require any bankruptcy-laden determinations and . . . do not conflict with the Bankruptcy Code." Dkt. #7, p. 12. He asserts this case can be distinguished from *Walls*, but even if the court finds otherwise, the court should adopt the Seventh Circuit's approach in *Randolph v IMBS, Inc.*, 368 F.3d 726 (7th Cir. 2004), and other courts that have read *Walls* narrowly. Dkt. #7, pp. 10-15. The Ninth Circuit Bankruptcy Appellate Panel considered a similar argument in *B-Real, LLC v. Chaussee (In re Chaussee)*, 399 Bankr. 225 (9th Cir. BAP 2008). The *Chaussee* court discussed the *Randolph* holding as follows:

> Spurning *Walls*, both Debtor and the bankruptcy court would urge us to invoke the reasoning espoused in *Randolph v. IMBS, Inc.*, 368 F.3d 726 (7th Cir. 2004), a case in which a debtor's FDCPA claim for violating the Code was allowed to proceed. In *Randolph*, a creditor sent a post-discharge letter to the debtor, allegedly in violation of the § 524 discharge. Noting that one federal statute should be found to have impliedly repealed another only when an irreconcilable conflict occurs when both co-exist, *Randolph* asserts that a court must evaluate whether competing statutes conflict before deciding whether preclusion applies. *Id.* at 730-31. Finding no direct conflict between the [Bankruptcy] Code and FDCPA under the facts before it, the

10 - FINDINGS & RECOMMENDATION

> Seventh Circuit ruled that the statutes could both be applied, and the debtor could therefore pursue a claim for relief against the creditor under FDCPA outside the bankruptcy court. *Id.* at 733.
>
> Of course, as a decision of the Ninth Circuit, this Panel is bound to apply *Walls* even were we inclined to agree with the logic and reasoning of *Randolph*. *McDonald v. Checks-N-Advance, Inc. (In re Ferrell)*, 358 B.R. 777, 791 (9th Cir. BAP 2006). But even if not so constrained, we would respectfully reject *Randolph's* analysis in this context and conclude, as in *Walls*, that the Code precludes application of the FDCPA under our facts.
>
> Unlike in *Randolph*, where the debtor's claim against the creditor was based upon the creditor's actions taken after conclusion of the bankruptcy case, the purported FDCPA violation targets B-Real's act of filing a proof of claim in the pending bankruptcy case. Application of the FDCPA to this conduct would certainly conflict with the Code.

*Chaussee*, 399 Bankr. at 237. This analysis suggests that, absent the precedential effect of *Walls*, the *Chaussee* court might have viewed the *Randolph* court's analysis more favorably under a similar set of facts. Nevertheless, like the *Chaussee* court, this court would appear to be bound by *Walls*, absent a subsequent change in the law.

In summary, then, under *Walls* and its progeny, it would appear that Walch could proceed in this action only on his Second Claim for Relief, and Count I of his Third Claim for Relief. However, on June 23, 2011, the United States Supreme Court issued an opinion that threw the proverbial wrench into the works. In *Stern v. Marshall*, ___ U.S. ___, 131 S. Ct. 2594, 180 L. Ed. 2d 475 (2011), the Court held that although Bankruptcy Courts have *statutory* authority to enter judgment in certain types of actions, such as common-law tort claims, they lack the *constitutional* authority to

11 - FINDINGS & RECOMMENDATION

do so under Article III.  In Walch's response to Columbia's motion to dismiss, he suggested the *Stern* decision at least "raises questions" regarding whether a bankruptcy court would have the authority to issue a judgment on his discharge-related claims in this case.  Dkt. #7, pp. 7-8.  Walch requested the opportunity to brief the issue further, and at the court's direction, the parties briefed the issue of the impact of *Stern*, if any, on Columbia's motion to dismiss.  *See* Dkt. ##12 & 13.

Walch argues *Stern* is directly applicable, to the extent a dismissal would affect his claims that do not implicate the Bankruptcy Code.  He argues the Bankruptcy Court would not have jurisdiction, under *Stern*, to decide those disputes, asserting "[t]he test to determine whether a dispute may be heard in bankruptcy court is whether 'the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in a way impacts upon the handling and administration of the bankruptcy estate.'"  Dkt. #13, p. 3 (quoting *Pacor v. Higgins*, 743 F.2d 987, 994 (3d Cir. 1984); and citing *Celotex Corp. v. Edwards*, 514 U.S. 300, 308 n.6, 115 S. Ct. 1493, 1499 n.6, 131 L. Ed. 2d 403 (1995) (citing *Pacor* for the proposition that a bankruptcy court's jurisdiction over matters "related to" the bankruptcy estate "cannot be limitless")).

With regard to his claims that are more closely related to his bankruptcy case, Walch argues *Stern* raises questions about the Bankruptcy Court's constitutional authority to provide him with any relief.  Walch notes that Columbia did not file a proof of claim or appear in his bankruptcy case, and thus it never submitted itself to the Bankruptcy Court's authority.  Dkt. #13, p. 4.  In addition,

12 - FINDINGS & RECOMMENDATION

he notes that although he listed Columbia in his schedules, Columbia was not actually a creditor of the bankruptcy estate; it was "merely a third party debt collector for creditor Silverton Hospital, and thus . . . had no impact on the handling or administration of the bankruptcy estate." Dkt. #13, p. 5. Walch also points out that the wages Columbia garnished from his pay a year after closure of the bankruptcy case "did not constitute property of the estate, and thus the Bankruptcy Court lacks authority to order [Columbia] to turnover the property." *Id.*

As one would expect, Columbia takes the opposite view, arguing *Stern* "does not overrule" *Walls* or this court's previous decision in *Church*. Columbia notes that in *Stern*, the Bankruptcy Court had entered judgment on a defamation claim, "when defamation was not a remedy within the Bankruptcy Code, and was not based on [a] violation of the Bankruptcy Code . . . for which the Bankruptcy Code already sets forth a remedy[.]" Dkt. #12, pp. 1-2. Columbia argues any violation of the discharge injunction must be raised as a civil contempt proceeding in the Bankruptcy Court. *Id.*, p. 2 (citing *Walls*). Columbia argues further that if Walch were allowed to proceed before this court, and obtained a judgment, he then could "obtain a second final judgment in the Bankruptcy Court for Contempt violations." Dkt. #12, p. 2. Columbia asserts, without citation to any authority, that "[t]he Bankruptcy Court is the sole Court with jurisdiction to issue a contempt order for violation of the bankruptcy discharge injunction under 11 U.S.C. § 105." *Id.*

Columbia argues all of Walch's claims in this case "stem from the bankruptcy itself[.]" Dkt. #12, p. 3. I disagree, as stated above in my discussion of Walch's claims. The question at issue

13 - FINDINGS & RECOMMENDATION

here is whether the Bankruptcy Court could enter judgment on those claims that *do not* stem from the bankruptcy itself; that is, claims that would exist regardless of the bankruptcy. Alternatively, even if the Bankruptcy Court could not enter a final judgment on Walch's non-bankruptcy claims, would it be an efficient use of judicial resources for the Bankruptcy Court to hear the entire matter, and then submit proposed findings of fact and conclusions of law on those non-core matters pursuant to 28 U.S.C. § 157(c)(1)?

As Columbia acknowledges in its brief, Dkt. #12, p. 3, *Stern* limits a Bankruptcy Court's "ability to enter final judgment on those . . . []claims that do not 'stem[] from the bankruptcy itself' or that will not be necessarily resolved in the claims objection process." *In re State Harbor Resort & Spa*, 456 Bankr. 703, 716 (Bankr. M.D. Fla. 2011) (quoting *Stern*, 131 S. Ct. at 2616)). Thus, under *Stern*, the Bankruptcy Court would lack constitutional authority to enter final judgment as to Walch's claims that do not "necessarily entail [any] bankruptcy-laden determinations." *Walls*, 276 F.3d at 510.

Walch's claims that are dependent upon the bankruptcy discharge order stem directly from the bankruptcy, and the Bankruptcy Court would have the authority to award relief on those claims by way of civil contempt proceedings. *See* 11 U.S.C. § 105; Fed. R. Bankr. P. 9014, 9020; *cf. Barrientos v. Wells Fargo Bank, N.A.*, 633 F.3d 1186, 1189-90 (9th Cir. 2011) (explaining the difference between a "contested matter" and an "adversary proceeding" under the Bankruptcy Code). "[C]ontempt proceedings brought by the trustee or a party in interest are contested matters that must be brought by motion in the bankruptcy case under Bankruptcy Rule

14 - FINDINGS & RECOMMENDATION

9014." *Barrientos*, 633 F.3d at 1191. "[C]ompensatory civil contempt allows an aggrieved debtor to obtain compensatory damages, attorneys fees, and the offending creditor's compliance with the discharge injunction. Therefore, contempt is the appropriate remedy[.]" *Walls*, 276 Fed. 3d at 507; *Church*, 2011 WL 2444719, at *5.

A Bankruptcy Court clearly has "jurisdiction to interpret and enforce its own prior orders," even years after the bankruptcy case has been closed. *Travelers Indem. Co. v. Bailey*, 557 U.S. 137, ___, 129 S. Ct. 2195, 2205, 174 L. Ed. 2d 99 (2009) (citing *Local Loan Co. v. Hunt*, 292 U.S. 234, 239, 54 S. Ct. 695, 697, 78 l. Ed. 1230 (1934)). However, the fact that the circumstances of most of Walch's claims "arise from bankruptcy procedures does not alter the fact that bankruptcy judges are not Article III judges." *In re Ortiz*, 665 F.3d 906, 913 (7th Cir. 2011) (citing *Stern*, 131 S. Ct. at 2609). Contrary to Columbia's assertions that this court lacks subject matter jurisdiction over Walch's bankruptcy-related claims, and that "[t]he Bankruptcy Court is the sole Court with jurisdiction to issue a contempt order for violation of the bankruptcy discharge injunction under 11 U.S.C. § 105," Dkt. #12, pp. 1-2, the District Court has jurisdiction over claims for civil contempt under 28 U.S.C. § 105. *In re Death Row Records, Inc.*, slip op., 2012 WL 952292, at *11 (9th Cir. BAP Mar. 21, 2012) (citing 28 U.S.C. § 1334(b), giving the District Courts "original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11," except in limited circumstances not relevant here). Furthermore, the District Court has discretion to withdraw any case or

15 - FINDINGS & RECOMMENDATION

proceeding from the Bankruptcy Court, either *sua sponte* or on motion of any party, "for cause shown," and *must* withdraw the reference in certain circumstances. 28 U.S.C. § 157(d).

The current landscape of *Stern*-related determinations continues to shift. The Ninth Circuit Court of Appeals is considering a case involving *Stern*-related issues at the time of this writing. It appears to the undersigned that there are three ways to handle this matter: (1) refer to the Bankruptcy Court those claims that require bankruptcy-laden determinations, and keep the other claims in this court; (2) refer the entire case to the Bankruptcy Court for that court to hear, and enter judgment on, those claims as to which it finds it has jurisdiction, and submit findings and recommendations to a District Judge on the other claims; or (3) withdraw the reference as to the entire case. There is precedent to support any of these three options.

It would seem to be most efficient to have the entire case heard at one time, in one court. At oral argument, Walch indicated he prefers to have the entire case remain in this court; however, he does not object to referral of the entire case to the Bankruptcy Court. Columbia prefers referral of the entire case to the Bankruptcy Court.

I recommend the entire matter be referred to the Bankruptcy Court. Some of Walch's claims will be resolved completely when the Bankruptcy Court determines whether its discharge order has been violated, and if so, what remedy is appropriate. As for the remaining claims, it would be appropriate for the Bankruptcy Court to determine the scope of its jurisdiction, and then to decide those claims as to which it concludes it has jurisdiction, and

16 - FINDINGS & RECOMMENDATION

submit findings and recommendations to the District Court on the remaining claims.

I do not, however, recommend granting Columbia's motion to dismiss.  Instead, I recommend the motion be **denied**, and then the case be referred to the Bankruptcy Court for further proceedings as discussed above.

### *SCHEDULING ORDER*

These Findings and Recommendations will be referred to a district judge. Objections, if any, are due by **July 9, 2012**. If no objections are filed, then the Findings and Recommendations will go under advisement on that date.  If objections are filed, then any response is due by **July 26, 2012**.  By the earlier of the response due date or the date a response is filed, the Findings and Recommendations will go under advisement.

IT IS SO ORDERED.

Dated this 19th day of June, 2012.

/s/ Dennis J. Hubel

_____
Dennis James Hubel
Unites States Magistrate Judge

17 - FINDINGS & RECOMMENDATION